**[J-16-2025] [MO: Brobson, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| INTERSTATE GAS SUPPLY, INC. D/B/A IGS ENERGY, NRG ENERGY, INC. AND SHIPLEY CHOICE LLC D/B/A SHIPLEY ENERGY, | : No. 10 MAP 2024<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 472 CD<br>: 2022 entered on April 28, 2023,<br>: Affirming the Order of the Public<br>: Utility Commission at Nos. C-2019-<br>: 3013805, C-2019-3013806, C-2019-<br>: 3013807 and C 2019-3013808<br>: entered April 14, 2022. |
| Appellants | |
| v. | |
| | : |
| PUBLIC UTILITY COMMISSION, | : ARGUED: April 8, 2025 |
| | : |
| Appellee | : |

## CONCURRING OPINION

**JUSTICE MUNDY**                    **DECIDED: September 25, 2025**

With the advent of competition in the retail electricity market, electric generation and distribution were decoupled. *See generally* the Electricity Generation Customer Choice and Competition Act of 1996 (Competition Act).[1] Now, some companies are electricity distribution companies (EDCs), and some are electric generation suppliers (EGSs). The EDCs bill the customer for both generation and distribution. They also operate what amounts to a regulated monopoly in a geographic region, where they distribute the electricity generated by EGSs over jurisdictional transmission and distribution facilities. This appeal arises because so-called "on-bill billing" is a feature customers find convenient – as it allows them to consolidate multiple services onto one invoice – and it is one that the EDC in this case, Intervenor FirstEnergy Pennsylvania

---

[1] Act of Dec. 3, 1996, P.L. 802, No. 138, § 4 (as amended 66 Pa.C.S. §§ 2801-2815).

Electric Company, provides to itself, but not to EGSs who seek to supply the same products and services to the end customer in competition with FirstEnergy. FirstEnergy thereby leverages its monopoly position to give itself a competitive advantage in relation to these items.

I begin with an observation about the Commonwealth Court's resolution of Appellants' challenge to FirstEnergy's anti-competitive billing practice. Section 1502 of the Public Utility Code requires non-discrimination. It states, in relevant part, that "[n]o public utility," including an EDC, "shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage." 66 Pa.C.S. § 1502. The Commonwealth Court read the word "any" in this passage to mean "any *other*." It thus determined an EDC does not violate this provision if it gives itself a billing advantage. *See Interstate Gas Supply, v. PUC*, 298 A.3d 1181, 1189-90 (Pa. Cmwlth. 2023). I believe the court erred in this regard, as the word "other" does not appear in the statutory text, and we have clarified that words like "all," "every," and "any" are all-inclusive.[2] Hence, this provision should, in my view, be read to preclude a utility granting itself an unreasonable preference or advantage.

Second, on-bill billing for "electric services" is itself a "service" for Section 1502 purposes, and it is subject to that provision's non-discrimination requirement. This is consistent with the PUC's conclusion in the *Columbia Gas* case, where the PUC found that a natural-gas distribution company violated the Code's non-discrimination

---

[2] *See In re Estate of Wilner*, 142 A.3d 796, 802 (Pa. 2016) ("This Court has explained, however, that universal, all-inclusive statutory terms, stated without any exceptions, encompass every category of the item in view."); *accord Vellon v. PennDOT*, 292 A.3d 882, 893 (Pa. 2023) (Mundy, J., concurring) ("[T]he word 'any' is universal."); *Krasner v. Ward*, 323 A.3d 674, 714 (Pa. 2024) (Mundy, J., dissenting) ("The word 'all' being universal necessarily incorporates impeachments by the House during a prior session.").

requirements by offering on-bill billing to some third parties but not others. *See PUC v. Columbia Gas of Pa.*, No. R-2018-2647577, *slip op.* (Public Util. Comm'n Dec. 6, 2018). Although that matter differed from the present dispute in that it only involved differential treatment of third parties, to reach its conclusion the PUC first had to determine that the natural gas distribution company's billing practice constituted a "service" under Section 102 of the Code, and was therefore subject to the PUC's jurisdiction to determine if it violated Section 1502. *See id*. at 44; *see also id*. at 47 ("The language of Section 1502 establishes a broad prohibition on discrimination in the provision of service by prohibiting the unreasonable preference of one party over any other party."). As applied here, EDCs may not grant themselves an advantage in billing customers for any "electric service" whether it be the commodity itself (electricity) or some non-commodity service that nonetheless amounts to an "electric service" for Section 2807(c) purposes.

This brings me to my final point. The majority does not evaluate the Commonwealth Court's determination that EDCs are allowed to discriminate in favor of themselves under Section 1502, as it resolves the appeal on alternate grounds: that the on-bill billing services presently in issue are not subsumed within the scope of that provision because they apply to non-electric services. To reach this conclusion, the majority first points out that Section 1502's non-discrimination provision is limited to acts performed by public utilities "as to service." 66 Pa.C.S. § 1502. It notes, as well, that the term "service" is defined by the Code in a limited manner: it contemplates only those acts done by public utilities "in the performance of their duties under this part," Majority Op. at 10 (quoting 66 Pa.C.S. §102), *i.e.*, under the Code.[3]

---

[3] "This part" refers to the Public Utility Code as a whole, which comprises Part 1 of Title 66, Pennsylvania Consolidated Statutes.

Turning, then, to a public utility's duties with respect to billing under the Code, Section 2807, which was enacted as part of the Competition Act, provides that EDCs are "responsible for billing customers for *all electric services*, consistent with the regulations of the commission, regardless of the identity of the provider of those services." 66 Pa.C.S § 2807(c) (emphasis added).

In light of these statutory provisions, providing on-bill billing for non-electric services is not a duty of an electric public utility, meaning it is not a "service" for purposes of Section 1502's anti-discrimination provision. I therefore agree with the majority's holding that the Code does not require EDCs to provide equal access to their invoices in relation to non-commodity services that are not "electric services" as contemplated by Section 2807(c). *See* 66 Pa.C.S. § 2807(c).

With that said, the phrase "all electric services" is plural and it starts with the word "all," which like "any" is universal in character. *See supra* note 2. The phrase thus appears to contemplate more than one type of service, and hence, more than just the supply of electricity to end users. Unfortunately, however, the term "electric services" is not defined by the Code, *see* Majority Op. at 11, and it is unclear from the filings what, besides electricity, constitutes an electric service. Appellant EGSs seek on-bill billing for items such as insulation service, home-repair services, and "warranty-type services." Brief for Appellants at 13; Complaint at ¶4. Under ordinary English usage these do not appear to qualify as "electric services." But Appellants also mention "electrical maintenance" as a non-commodity service, *see id.*, which sounds like it could potentially qualify as an electric service. And in their testimony before the PUC they referred to other items such as "distributed solar generation" and "smart thermostats." Joint Complainants' Statement No. 1, at 3.

The difficulty is that Appellants do not distinguish such items from products that clearly do not fall within the scope of the term "electric services." Instead, their position throughout this litigation has been that *all* non-commodity services are entitled to non-discriminatory access to an EDC's invoice. As a consequence, this Court lacks any briefing or evidentiary record tending to illuminate the contours of the statutory term.

Given the above, I join the majority opinion with the understanding that, as to the phrase "all electric services" in Section 2807(c), we have left the term's full scope open for resolution in a future case with a developed record and focused advocacy.